**ORIGINAL**

AO 91 (Rev. 11/82)     **CRIMINAL COMPLAINT**

FILED
CLERK, U.S. DISTRICT COURT
JUL 15 2019
CENTRAL DISTRICT OF CALIFORNIA
BY dj DEPUTY

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>ERIC WAYNE FORREST | DOCKET NO. 2:19-MJ-2792<br><br>MAGISTRATE'S CASE NO. |

Complaint for violation of Title 18, United States Code, Section 922(g)(1)

| NAME OF MAGISTRATE JUDGE<br>THE HONORABLE LOUISE A. LAMOTHE | UNITED STATES MAGISTRATE JUDGE | LOCATION<br>Santa Barbara, California |
|---|---|---|
| DATE OF OFFENSE<br>April 18, 2019 | PLACE OF OFFENSE<br>Ventura County | ADDRESS OF ACCUSED (IF KNOWN) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[18 U.S.C. § 922(g)(1)]

On or about April 18, 2019, in Ventura County, within the Central District of California, defendant ERIC WAYNE FORREST knowingly possessed a firearm and ammunition knowing that he had previously been convicted of one or more felony crimes.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>WILLIAM B. ROSE *(signature)*<br>OFFICIAL TITLE<br>Special Agent, Federal Bureau of Investigation |
|---|---|

Sworn to before me and subscribed in my presence,

SIGNATURE OF MAGISTRATE JUDGE⁽¹⁾ *(signature: Louise A. Lamothe)*     DATE July 15, 2019

⁽¹⁾ See Federal Rules of Criminal Procedure 3 and 54

AUSA Sylvia R. Ewald 213-894-0717     REC: Detention

**AFFIDAVIT**

I, William B. Rose, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against ERIC WAYNE FORREST, aka "Wicked" ("FORREST"), for a violation of Title 18, United States Code, Section 922(g)(1): Felon in Possession of a Firearm and Ammunition.

2. This affidavit is also made in support of an application for a warrant to search the following two digital devices, in the custody of the Federal Bureau of Investigation, in Ventura, California (collectively, the "SUBJECT DEVICES"), as described more fully in Attachment A:

   a. Black Samsung cellular telephone ("SUBJECT DEVICE 1"); and

   b. Black Motorola cellular telephone ("SUBJECT DEVICE 2").

3. The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Section 922(g)(1) (Felon in Possession of a Firearm and Ammunition) (the "Subject Offense"), as described more fully in Attachment B. Attachments A and B are incorporated herein by reference.

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and

witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

5. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and have been so employed for approximately 19 years. I am currently assigned to investigate criminal street gangs in the Central District of California. During my tenure as an SA, I have investigated criminal street gangs, convicted felon gang members who possess firearms, and the distribution of illegal drugs such as methamphetamine by gang members. I graduated from a 16-week course in Quantico, Virginia at the FBI Academy, where I received training in federal firearms and drug laws, evidence collection, and various surveillance and investigative techniques. I have completed additional training on organized crime and money laundering conducted by organized criminal groups.

## III. SUMMARY OF PROBABLE CAUSE

6. On April 18, 2019, Ventura Police Department ("VPD") detectives saw FORREST, whom they recognized as a gang member with an outstanding warrant for violating the terms of his probation, walking on a public promenade. When the VPD detectives approached FORREST, he dropped the black backpack he

was carrying and ran. After a foot pursuit and a physical altercation, FORREST was arrested. During a search of FORREST's backpack, VPD officers found a J.C. Higgins Model 583.16 sawed-off 12-gauge shotgun, ten shotgun rounds, and the SUBJECT DEVICES.

## IV. STATEMENT OF PROBABLE CAUSE

7. Based on my review of law enforcement reports, including VPD reports, conversations with other law enforcement agents, my review of body worn camera recordings, and my own knowledge of the investigation, I am aware of the following:

### A. Officers Recognized FORREST and Determined He Had An Outstanding Warrant

8. On or about April 18, 2019, at approximately 3:15 P.M., VPD Gang Detective Corporal Michael Acquarelli and Detective Art Gonzales were driving near the promenade in Ventura, California, when Detective Gonzales recognized two pedestrians as FORREST and his girlfriend Ashley Barreto. The detectives knew FORREST to be a documented gang member. Detective Aquarelli had worked on a case involving FORREST a few days earlier, and through that case learned that FORREST was on post-release community supervision and subject to search terms. The detectives consulted a law enforcement database and learned there were active arrest warrants for both FORREST and Barreto. The database also confirmed that FORREST was on post-release community supervision.

9. The detectives parked and got out of their car. Wearing clothing identifying themselves as police, they began to

3

follow FORREST and Barreto as they walked on the promenade. FORREST was carrying a black backpack over his right shoulder. Not long after, FORREST looked back, saw Detective Gonzales, dropped the black backpack he was carrying, and fled on foot eastbound on the promenade.

10. Detective Gonzales arrested Barreto and stayed with the black backpack dropped by FORREST.

11. Detective Acquarelli followed FORREST on foot, identified himself as a police officer, and ordered FORREST to stop. FORREST continued to flee to the Crown Plaza Hotel, which is located at 450 E. Harbor Boulevard, in Ventura.

12. Detective Acquarelli caught up to FORREST when FORREST reached the doors to the Crown Plaza Hotel. Detective Acquarelli attempted to pull FORREST down to the ground. FORREST resisted and Detective Acquarelli and FORREST fell to the ground. After a brief struggle, with the assistance of another officer who had responded to a call for back-up, Detective Acquarelli placed handcuffs on FORREST.

**B. Officers Found a Shotgun in FORREST's Backpack**

13. VPD Officer Miguel Martinez, who had also responded to the call for back-up, searched FORREST's black backpack. Officer Martinez found the following items:

    a. An unloaded J.C. Higgins Model 583.16 12-gauge shotgun with the butt sawed off;

    b. Eight Winchester shotgun buckshot rounds;

    c. One Cheddite shotgun buckshot round;

    d. One Winchester shotgun slug round;

    e. Lock-picking kit;

    f. Seven vehicle ignition keys;

    g. Gloves;

    h. A black folding 3.5 inch knife;

    i. One black Samsung cellphone (SUBJECT DEVICE 1); and

    j. One black Motorola cellphone (SUBJECT DEVICE 2).

  **C.** **Officers Interviewed Ashley Barreto**

  14. FORREST refused to be interviewed.

  15. On June 20, 2019, I reviewed the video of Ashley Barreto's Mirandized interview at VPD on April 18, 2019, following her arrest. The interview was conducted by Detectives Gonzales and Lopez, and I learned the following:

    a. Barreto advised she had dated FORREST for approximately one year.

    b. Barreto identified the backpack being carried by FORREST as belonging to FORREST.

    c. Barreto denied she had any property in FORREST's backpack.

    d. Barreto claimed she did not know FORREST had a shotgun in the backpack he was carrying.

    e. Barreto admitted she heard Detective Gonzales yell "stop" before she was arrested.

  **D.** **FORREST's Criminal History**

  16. On June 17, 2019, I reviewed certified conviction documents for FORREST. I learned that FORREST has previously

5

been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

       a. On or about December 4, 2012, a violation of California Vehicle Code Section 2800.2(a) (Evade Peace Officer) and California Vehicle Code Section 10851(a) (Take Vehicle Without Owner's Consent), in the Superior Court for the State of California, County of Ventura, case number 2012012382;

       b. On or about July 26, 2016, a violation of California Penal Code Section 4573.8 (Possession of Alcohol in Jail), in the Superior Court for the State of California, County of Ventura, case number 2015029703; and

       c. On or about July 26, 2016, a violation of California Penal Code Section 242 (Battery), in the Superior Court of the State of California, County of Ventura, case number 2016008148.

### E. Interstate Nexus

17. On June 23, 2019, ATF Interstate Nexus Expert Bryan Traverso examined photographs of the J.C. Higgins Model 583.16 sawed-off 12-gauge shotgun recovered from FORREST's backpack and confirmed that the shotgun was manufactured in Connecticut, outside of the State of California. Because the shotgun was found in California, I believe that it has traveled in and affected interstate commerce.

18. On June 23, 2019, ATF Interstate Nexus Expert Bryan Traverso examined photographs of the Winchester shotgun rounds and confirmed that the shotgun rounds were manufactured in Illinois, outside of the State of California. ATF Interstate

Expert Bryan Traverso also examined photographs of the Cheddite shotgun round and confirmed that it was made in France, outside the State of California. Because the shotgun rounds were found in California, I believe that they had traveled in and affected interstate commerce.

### V. TRAINING AND EXPERIENCE ON FIREARMS OFFENSES

19. From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct who conduct firearms investigations, I am aware of the following:

    a. Persons who possess, purchase, or sell firearms generally maintain records of their firearm transactions as items of value and usually keep them in their residence, or in places that are readily accessible, and under their physical control, such in their digital devices. It has been my experience that prohibited individuals who own firearms illegally will keep the contact information of the individual who is supplying firearms to prohibited individuals or other individuals involved in criminal activities for future purchases or referrals. Such information is also kept on digital devices.

    b. Many people also keep mementos of their firearms, including digital photographs or recordings of themselves possessing or using firearms on their digital devices. These photographs and recordings are often shared via social media, text messages, and over text messaging applications.

    c. Those who illegally possess firearms often sell their firearms and purchase firearms. Correspondence between

7

persons buying and selling firearms often occurs over phone calls, e-mail, text message, and social media message to and from smartphones, laptops, or other digital devices. This includes sending photos of the firearm between the seller and the buyer, as well as negotiation of price. In my experience, individuals who engage in street sales of firearms frequently use phone calls, e-mail, and text messages to communicate with each other regarding firearms that the sell or offer for sale. In addition, it is common for individuals engaging in the unlawful sale of firearms to have photographs of firearms they or other individuals working with them possess on their cellular phones and other digital devices as they frequently send these photos to each other to boast of their firearms possession and/or to facilitate sales or transfers of firearms.

      d.    Individuals engaged in the illegal purchase or sale of firearms and other contraband often use multiple digital devices.

## VI. TRAINING AND EXPERIENCE ON DIGITAL DEVICES

    20.    As used herein, the term "digital device" includes the SUBJECT DEVICES.

    21.    Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

      a.    Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally,

when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

   b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

   c. The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

9

      d. Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

22. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

      a. Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

      b. Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

23. Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VII. CONCLUSION

24. For all of the reasons described above, there is probable cause to believe that ERIC WAYNE FORREST, aka "Wicked," has committed a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm (the "Subject Offense"). There is also probable cause that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICES described in Attachment A

William B. Rose, Special Agent
FBI

Subscribed to and sworn before me this 15th day of July, 2019.

UNITED STATES MAGISTRATE JUDGE